IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MUI THI HOANG,

      Plaintiff,                       No. CIV S-08-1728 GGH

  vs.

COMMISSIONER OF
SOCIAL SECURITY,                       ORDER

      Defendant.
_____/

       Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons that follow, plaintiff's Motion for Summary Judgment is DENIED, the Commissioner's Cross Motion for Summary Judgment is GRANTED, and the Clerk is directed to enter judgment for the Commissioner.

       This case has all the earmarks of one which was filed because the plaintiff is probably unemployable in the market economy on account of many reasons, and it was time to proffer the reason of disability. However, the dearth of treatment records showing any long-term medical problems belie any claim for disability. Plaintiff's reliance on one consultant psychiatric examiner who conducted a "one shot" examination, and concluded that plaintiff was essentially

1

unemployable on account of depression, does not win the day.

BACKGROUND

Plaintiff, born January 15, 1954, applied on April 15, 2006 for disability benefits. Tr. at 18. Plaintiff alleged she was unable to work, taking care of her mother-in-law, due to headaches, arthritis, lower back pain, stress, dizziness, chest pain, poor memory, anxiety, difficulty sleeping, hip pain, poor concentration, insomnia, depression and asthma. Tr. at 14.

In a decision dated November 29, 2007, ALJ Stanley R. Hogg determined plaintiff was not disabled. The ALJ made the following findings:[1]

> 1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 2. The claimant has the following medically determinable impairments: depression and possible pre-syncope 20 CFR

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:
> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

§ 416.920(c).

    3.    The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 416.921).

    4.    The claimant has not been under a disability, as defined in the Social Security Act, since April 15, 2006 (20 CFR 416.920(c)), the date the application was filed.

Tr. at 12, 17.

ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether the ALJ failed to develop the record regarding plaintiff's hip surgery; B. Whether the ALJ erred in not finding that plaintiff had a severe impairment in step two of the evaluation process; and C. Whether the ALJ erred in failing to credit plaintiff's statements and third party statements.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), *quoting* Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

\\\\\

\\\\\

ANALYSIS

    A.  <u>Whether the ALJ failed to develop the record</u>

Plaintiff contends that the ALJ failed to adequately develop the record concerning plaintiff's hip surgery.

Disability hearings are not adversarial. <u>Dixon v. Heckler</u>, 811 F.2d 506, 510 (10th Cir. 1987) (holding that ALJ has basic duty to "inform himself about facts relevant to his decision") (quoting <u>Heckler v. Campbell</u>, 461 U.S. 458, 471 n.1 (1983) (Brennan, J., concurring)). The ALJ must fully and fairly develop the record, and when a claimant is not represented by counsel, an ALJ must be "especially diligent in exploring for all relevant facts." <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001).[2]

Evidence raising an issue requiring the ALJ to investigate further depends on the case. Generally, there must be some objective evidence suggesting a condition which could have a material impact on the disability decision. <u>See</u> <u>Smolen v. Chater</u>, 80 F.3d 1273, 1288 (9th Cir.1996); <u>Wainwright v. Secretary of Health and Human Services</u>, 939 F.2d 680, 682 (9th Cir.1991). "Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate inquiry.'" <u>Tonapetyan</u>, 242 F.3d at 1150 (quoting <u>Smolen</u>, 80 F.3d at 1288.). The ALJ's decision may be set aside due to his failure to develop the record if the claimant can demonstrate prejudice or unfairness as a result of said failure. <u>Vidal v. Harris</u>, 637 F.2d 710, 713 (9th Cir. 1991). Thus, the Ninth Circuit places the burden of proving prejudice or unfairness on the claimant.

On October 31, 2007, plaintiff appeared with her attorney and testified before the ALJ.[3] Plaintiff stated that she had an operation in February 2007 to remove a baseball size tumor

---

[2] <u>See also</u> <u>Crane v. Shalala</u>, 76 F.3d 251, 255 (9th Cir.1996) (ALJ has duty to develop the record even when claimant is represented).

[3] Plaintiff's pleadings incorrectly state that plaintiff was represented by a non-attorney at the hearing. Plaintiff's Motion for SJ at 1. However, the transcripts of the ALJ hearing indicate

4

from her right leg. Tr. at 182. She also indicated that when she wakes in the morning her right leg is numb and she has to wait twenty minutes for the numbness to stop. Id. This was the only mention of the surgery during the ALJ hearing.

The medical records only reveal that plaintiff underwent the surgery, but there are no details concerning any complications or any indication that the hip surgery led plaintiff to experience any severe difficulties. Plaintiff contends that the ALJ should have further developed the record concerning the hip surgery, by ordering the surgical records. It is unclear why plaintiff, represented by counsel at the hearing, was unable to obtain these records if they were vital. Nor is there any explanation why plaintiff, now represented by different counsel, has still not obtained these records. While the ALJ must fully and fairly develop the record where appropriate, the burden of proving disability is on plaintiff. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

The ALJ has a duty to develop the record if the evidence is ambiguous, however, in this case, the ALJ did not find any ambiguity with respect to the hip surgery that required further inquiry. Plaintiff's only mention of the problems resulting from the surgery is numbness and pain in her right leg each morning that goes away after twenty minutes or after pain medication. Tr. at 182, 187. The ALJ also noted that, despite this, plaintiff was able to lift a gallon of milk, stand for twenty minutes, walk for ten to fifteen minutes, sit for about twenty minutes and is able to take care of her personal needs. As there is no indication of any problems from the hip surgery of a long-term work precluding nature, the ALJ did not err in declining to further develop the record.

Most importantly, the ALJ also found that, "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. at 14.

---

that plaintiff was represented by attorney, Danielle Duarte. Tr. 179, 180. Somewhat confusingly, the ALJ decision indicates that plaintiff was represented by "Richard A. Shore, an attorney." (Tr. 10).

1  There was no need to further develop the record as the ALJ did not find all of plaintiff's claims
2  entirely credible.  The ALJ stated in the opinion, and plaintiff stated during the hearing, that
3  plaintiff stopped working because her mother-in-law did not like her.  Tr. at 15, 190.  During the
4  hearing, the ALJ asked the primary reason that plaintiff stopped working taking care of her
5  mother-in-law.  Plaintiff responded, "mostly because of my mother-in-law, [she] didn't like me."
6  Tr. at 190.

The undersigned finds that the ALJ was capable of rendering a proper decision without additional information about the hip surgery and plaintiff has not proven prejudice or unfairness.

B. <u>Whether the ALJ erred in failing to find a severe impairment</u>

Plaintiff next argues that the ALJ did not fully credit Dr. Desai and Dr. Regazzi's medical evidence nor did the ALJ adequately consider plaintiff's other symptoms in finding no severe impairment.

Plaintiff has the burden of proving that she has a severe impairment at step two of the sequential evaluation process.  An impairment is severe if it significantly limits one's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment is "non-severe" if it does not significantly limit one's physical or mental ability to do basic work activities.  20 C.F.R. § § 404.1521(a), 416.921(a).  Basic work activities are the "abilities and aptitudes necessary to do most jobs," such as (1) physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) the use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  20 C.F.R. § § 404.1521(b), 416.921(b).

At the second step of the disability analysis, an impairment is not severe only if it "would have no more than a minimal effect on an individual's ability to work, even if the

6

individual's age, education, or work experience were specifically considered." Bowen v. Yuckert, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. Id. "The step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir.1996). At this step, the ALJ may decline to find a severe impairment "*only* if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005) (emphasis in original).

The ALJ found that plaintiff had the medically determinable impairments of depression and possible pre-syncope, but the ALJ did not find there was a severe impairment.

Dr. Regazzi performed an evaluation of plaintiff's headaches and depression, at the request of plaintiff's attorney. Plaintiff argues that Dr. Regazzi's medical evidence was sufficient to find a severe impairment. However, Dr. Regazzi's report stated that plaintiff is capable of carrying out basic personal care tasks and she can carry out most other daily living tasks such as cooking and cleaning. While Dr. Regazzi's report contains plaintiff's statement that she is depressed, Dr. Regazzi states that her mood was unremarkable. Tr. at 130. The doctor also described plaintiff as interacting appropriately with others, having adequate verbal communication skills, and no significant impairment with her social functioning. Tr. at 131. Dr. Regazzi stated that plaintiff has an adequate ability to concentrate on simple tasks but plaintiff's "ability for sustained concentration is expected to be moderately impaired, due to her depression." Tr. at 131. Dr. Regazzi bases this conclusion partly on plaintiff's TONI results (Test of Nonverbal Intelligence), yet the doctor was unable to administer the test as plaintiff did not bring her glasses to the appointment. Tr. at 130-31. It also remains unclear how an intelligence test could diagnose depression.

\\\\\

1           Plaintiff also contends that the ALJ should have found a severe impairment based
2  on Dr. Desai's medical records.  Dr Desai is plaintiff's primary care physician.  However,
3  plaintiff does not cite to anywhere in the record or describe where Dr. Desai stated that plaintiff
4  had a severe impairment.  Dr. Desai's records indicate certain symptoms but there is no diagnosis
5  or conclusion.  While a treating physician's opinion is usually afforded great weight, the ALJ is
6  not bound by it when determining the existence of a disability.  Batson v. Commission of Social
7  Security Administration, 359 F.3d 1190, 1194-95 (9th Cir. 2004).

8           Dr. Desai's records indicate that plaintiff complained of pain, insomnia, fatigue,
9  dizziness, crying spells, depression, anxiety, headaches, asthma, GERD and joint pain and she
10 recently had hip surgery.  Plaintiff argues that the ALJ erred and should have found that these
11 symptoms constituted a severe impairment.  As previously stated, the mention of these symptoms
12 does not entitle plaintiff to a finding of a severe impairment.  Dr. Desai noted these symptoms in
13 his records but never provided a diagnosis or set forth any conclusions.  Even if plaintiff does
14 suffer from these ailments, the ALJ is not required to find a severe impairment if there is not
15 sufficient evidence in support.  Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999).

16          Moreover, Dr. Regazzi and Dr. Desai's evaluations are based in large part on
17 plaintiff's subjective complaints.  "An ALJ may reject a treating physician's opinion if it is based
18 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible."
19 Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008), citing Morgan v. Comm'r Soc. Sec.
20 Admin., 169 F.3d 595, 602 (9th Cir. 1999) (citing Fair V. Bowen, 885 F.2d 597, 605 (9th Cir.
21 1989)).  Furthermore, "the ALJ is the final arbiter with respect to resolving ambiguities in the
22 medical evidence."  Id.

23          Here, plaintiff has not offered sufficient evidence to demonstrate that her physical
24 or mental impairments have more than a minimal effect on her ability to perform work-related
25 functions.
26 \\\\\

In not finding a severe impairment based on Dr. Desai and Dr. Regazzi's records, the ALJ also discussed the other medical evidence from the SSA ordered examinations. Dr. McIntire's neurological consultative evaluation found no physical or cognitive limitations and Dr. Joyce's psychiatric consultative evaluation found no evidence of any psychiatric diagnosis or symptoms that would preclude plaintiff from working. Tr. 156, 159 -60. As discussed later, the ALJ did not fully credit Dr. Desai and Dr. Regazzi's findings and did not find plaintiff's statements entirely credible, that also attributed to not finding a severe impairment. Most importantly, based on plaintiff's own statements and the medical evidence, plaintiff is able to do basic work activities, similar to the activities she did while working in home care for her mother-in-law.

Plaintiff has failed to establish that she had a severe impairment. Accordingly, this argument is without merit.

### C. Whether the ALJ failed to credit plaintiff's claims and a third party statement

Plaintiff argues that the ALJ failed to credit plaintiff's testimony and the lay witness statements of plaintiff's friend, Ms. Tran. Defendant argues that the ALJ provided clear and convincing reasons for discounting plaintiff's testimony and the ALJ's failure to address Ms. Tran's statements was harmless error.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ who used the proper process and provided proper reasons. See, Saelee v. Chater, 94 F.3d 520, 522 (9th Cir.1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir.1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir.1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. July 8, 2009); Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991) (en

banc). The ALJ may not find subjective complaints incredible solely because objective medical evidence does not quantify them. Bunnell at 345-46. If the record contains objective medical evidence of an impairment reasonably expected to cause pain, the ALJ then considers the nature of the alleged symptoms, including aggravating factors, medication, treatment, and functional restrictions. See Vasquez, 572 F.3d at 591. The ALJ also may consider the applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) daily activities.[4] Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct, may also be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990). Plaintiff is required to show only that her impairment "could reasonably have caused some degree of the symptom." Vasquez, 572 F.3d at 591, *quoting* Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007), Smolen, 80 F.3d at 1282. Absent affirmative evidence demonstrating malingering, the reasons for rejecting applicant testimony must be specific, clear and convincing. Vasquez, 572 F.3d at 591.

      Here, the ALJ analyzed plaintiff's credibility in terms of her mental health symptoms and her physical symptoms and discussed plaintiff's statements and the medical reports. The ALJ's analysis was quite developed, consisting of over two pages of the decision and he found statements concerning plaintiff's symptoms not credible. Tr. at 14-16. Ultimately,

---

[4] Daily activities which consume a substantial part of an applicants day are relevant. "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (quotation and citation omitted).

the ALJ concluded that plaintiff's statements were not supported by the medical evidence.

In finding that plaintiff's symptoms lacked credibility, the ALJ cited to Dr. McIntire's neurological consultative evaluation that found no physical or cognitive limitations. Tr. at 14. The ALJ discussed Dr. Joyce's psychiatric consultative evaluation which found no evidence of any psychiatric diagnosis or symptoms that would preclude plaintiff from working. Id. The ALJ also noted that plaintiff's personal doctor, Dr. Desai, never referred plaintiff to specialists or mental health professionals, and Dr. Desai's records contain no clinical or diagnostic findings. Tr. at 15. Plaintiff never sought out treatment at any crisis centers, county mental health centers, or any United Way organizations.

The ALJ accorded only minimal weight to Dr. Regazzi's report, who performed a psychological evaluation of plaintiff's headaches and depression, at the request of plaintiff's attorney. The ALJ found that Dr. Regazzi's report was not supported by the consultative evaluation and the fact that plaintiff had never sought help for mental health symptoms. Tr. at 16. Plaintiff also told Dr. Regazzi that she had never worked in the United States, which is contrary to all the other evidence plaintiff provided. Id. The ALJ felt this misinformation rendered Dr. Regazzi's report entitled to less weight. Id.

With respect to plaintiff's subjective complaints, the ALJ discussed in detail plaintiff's statements and testimony. Plaintiff was able to lift a gallon of milk, stand for twenty minutes, walk for ten to fifteen minutes, sit for about twenty minutes and is able to take care of her personal needs. Tr. at 15. Plaintiff also stated that pain medication helps her for several hours. Tr. at 15. Most importantly, plaintiff stated several times that she stopped working because her mother-in-law did not treat her well.

An ALJ may disregard a plaintiff's self-serving statements if they are not supported by the objective evidence. Hudson v. Bowen, 849 F.2d 433, 434 (9th Cir.1988). The ALJ is accorded great weight in his determination of credibility. Id. Furthermore, this court gives deference to the ALJ's assessment of plaintiff's testimony. "Credibility determinations are

the province of the ALJ." Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir.1995).

In this case, the ALJ properly analyzed the evidence and provided clear and convincing reasons for discounting plaintiff's credibility. Plaintiff appears able to do many of the same tasks that she did when she worked taking care of her mother-in-law. While she does experience pain, she stated that pain medication helps for several hours. A condition which can be controlled or corrected by medication is not disabling. Warre v. Commissioner of SSA, 439 F.3d 1001, 1006 (9th Cir.2006). It also appears the primary reason plaintiff stopped working was due to the attitude of her mother-in-law. The ALJ's findings were adequately supported by the record and this claim lacks merit.

With regard to third party statements, an ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir.1987). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir.2001). Similar to the ALJ's role in evaluating the testimony of a claimant, when evaluating the testimony of a lay witness "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir.1998).

The Ninth Circuit has recently held that the ALJ must properly discuss lay witness testimony, and that any failure to do so is not harmless unless no reasonable ALJ, when fully crediting the testimony, could have come to a different disability determination. Stout v. Commissioner, 454 F.3d 1050, 1056 (9th Cir. 2006).

Ms. Tran filled out two separate third party statements on April 29, 2006, and January 31, 2007. The ALJ did not refer to either of Ms. Tran's statements. In the 2006 statement Ms. Tran states that she has known plaintiff for approximately five years and only sees plaintiff when she drives her to the doctor or market. Tr. at 90. However, in the 2007 statement

1  Ms. Tran states that she has only known plaintiff for approximately three years and visits plaintiff
2  once a week.  Tr. at 59.  In response to the question of what plaintiff does from the time she
3  wakes up to the time she goes to bed, Ms. Tran answered that she did not know.  Tr. at 59.
4  Based on her answers, Ms. Tran is only slightly knowledgeable of plaintiff's ailments and speaks
5  generally of plaintiff's problems.  Ms. Tran does state that plaintiff is able to do light cooking
6  and light housework.  Tr. at 61.

7        Defendant correctly argues that the ALJ's failure to cite the third party statements
8  was harmless error as the statements were neither significant or probative.  Curry v. Sullivan, 925
9  F.2d 1127, 1131 (9th Cir.1990) (harmless error rule applies).  At most, Ms. Tran only saw
10 plaintiff once a week, to drive her, and was not able to provide any detail regarding plaintiff's
11 daily activities.  Ms. Tran's lack of knowledge regarding any vital information makes her
12 statements neither significant nor probative.  The ALJ's failure to cite to these statements was
13 harmless error as it is clear that no ALJ when fully crediting the testomy could have come to a
14 different disability determination.

15 CONCLUSION

16        Accordingly, IT IS ORDERED that plaintiff's Motion for Summary Judgment is
17 denied, the Commissioner's Cross Motion for Summary Judgment is granted, and judgment is
18 entered for the Commissioner.

19 DATED: 09/09/09                                    /s/ Gregory G. Hollows

20                                                   GREGORY G. HOLLOWS
                                                     U.S. MAGISTRATE JUDGE
21 ggh: ab
   Hoang1728.ss
22